IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Cause No. 10-20718-CV-COOKE-BANDSTRA

ALBERT SEGAL and
MARIANNA CHAPAROVA,

      Plaintiffs,

*vs.*

AMAZON.COM, INC.,

      Defendant.

_____/

FILED by _____ D.C.

JUN 0 1 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
AMAZON.COM, INC.'S "MOTION TO DISMISS FOR IMPROPER VENUE OR,
ALTERNATIVELY, MOTION TO TRANSFER VENUE OR, ALTERNATIVELY,
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM"**

Plaintiffs, Albert Segal and Marianna Chaparova ("Plaintiffs"), on their own behalf,

respectfully ask this Court to ***DENY*** Defendant Amazon.com, Inc.'s "Motion to Dismiss for

Improper Venue or, Alternatively, Motion to Transfer Venue or, Alternatively, Motion to

Dismiss for Failure to State a Claim" ("Motion"). In support thereof, Plaintiffs state as follows:

**I.    INTRODUCTION**

Plaintiffs were conducting honest business when Defendant Amazon.com, Inc.

("Amazon") denied Plaintiffs access to their own money. Amazon's actions have had the effect

of forcing Plaintiffs out of business. As a result of Amazon's actions, Plaintiffs have suffered,

and continue to suffer, a great deal. When Amazon deprived Plaintiffs of the means to generate

income, Plaintiffs were left to struggle financially, and ended-up falling behind in credit card

bills and other obligations.

Amazon's conduct victimizes honest and unsuspecting consumers, who spend their life savings to purchase merchandise that they intend to sell on Amazon.com for a modest profit. Amazon withholds funds systematically, regardless of buyer feedback and in the absence of any disputes. Plaintiffs, for example, had near perfect buyer feedback rating, with absolutely no complaints from any of the buyers and no claims filed against their Amazon account, when Amazon decided that it was reasonable to withhold the Plaintiffs' funds for over three and a half months. Amazon then makes use of those funds and, as a result, pockets an ill-gotten profit. This is not denied in Amazon's Motion.

Shortly after filing their lawsuit, Plaintiffs started receiving e-mails from individuals with similar stories on almost daily basis. In addition to having in common the fact that they were getting positive feedback from buyers and that the funds Amazon was withholding from them were not equivalent to any claims, what all these individuals and small "mom and pop" store-owners also seem to have in common is that they do not have the resources to litigate their claims against Amazon. Amazon, of course, is well aware of that.

Amazon's justification for its actions is its "Participation Agreement" ("Agreement"). *See* "Declaration of Catherine Ceely" (Decl. "Exhibit 1" at 3), filed as part of Amazon's Motion. It is stated in Amazon's Motion that, under the Agreement, Amazon is allowed, "in its sole discretion," to withhold funds for up to ninety (90) days to investigate accounts and, likewise, to terminate accounts. *See, e.g.,* Amazon's Motion, ¶ 2 at 15; ¶ 1 at 18.

The fact that Amazon systematically withholds funds in excess of ninety (90) days – not mentioned anywhere in Amazon's Motion – is a clear indication that Amazon, in its sole discretion, has determined that it may withhold funds for any length of time, regardless of what the Agreement states. Plaintiffs were denied access to their funds for well over one hundred

(100) days.  In fact, Amazon refused to release the Plaintiffs' funds even after the deadline for disputing any of the Plaintiffs' transactions had passed.  As of May 11, 2010, Amazon was withholding Plaintiffs' <u>undisputed</u> funds from sales transactions that were completed in mid-January 2010.

Plaintiffs filed their lawsuit against Amazon pursuant to, inter alia, Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and did not assert a breach of contract cause of action. Plaintiffs' claims arise out of Amazon's intentional, willful and unlawful conduct that deceives consumers for the sake of profit-making.  The FDUTPA was passed to protect the Florida consumers, such as Plaintiffs, from the type of business conduct in which Amazon is currently engaged.

In their motion, Amazon's counsel argues that Amazon is justified in its actions because Plaintiffs assented to the Agreement.  Plaintiff Albert Segal, however, had not so much as seen the Agreement until recently.  Plaintiff Marianna Chaparova could not have truly assented to the Agreement, since the Agreement is presented on a take-it-or-leave-it basis, is not intended to be easily understood by a layperson, and is heavily tilted to unfairly favor Amazon.  Moreover, the registration process can be completed without having to scroll through the Agreement's many pages of small print.  Had Plaintiffs been able to read and understand the Agreement, they still would have been in for a surprise. given the fact that neither a veteran attorney nor a seasoned business professional would have been able to determine, from a simple reading of the Agreement, that it allows Amazon to withhold honest sellers' funds, absent some sort of a dispute.  It is a settled principle of law that one cannot contract out of being held accountable for committing an unlawful act, which is what Amazon has attempted to do.  The Agreement, upon

3

which Amazon relies to justify its conduct, is so heavily one-sided and unfair that it must be rendered unconscionable and unenforceable as a matter of law.

Plaintiffs have very limited resources and, if this Court grants Amazon's motion, Plaintiffs will be denied their day in court. It is certain that, if this Court grants Amazon's motion, Amazon will not be held accountable for the harm it caused Plaintiffs and will continue to act with impunity.

## II.    **ARGUMENT**

Plaintiffs brought this action to remedy Amazon's unlawful acts pursuant to, inter alia, Florida Deceptive and Unfair Trade Practices Act (FDUTPA). *See* Fla. Stat. § 501.202 (stating that "the provisions of this part shall be construed liberally. . . to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce"); *see also PNR v. Beacon Property Management*, 842 So. 2d 773, 777 (2003) (stating that "an unfair practice [under FDUTPA] is one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers").

The causes of action in Plaintiffs' Complaint are based on Amazon's unlawful conduct that violates this state's consumer protection laws and tort law. Plaintiffs have not included a "breach of contract" claim for relief in their Complaint. Moreover, Plaintiff Albert Segal had not even seen the Agreement until recently. Nonetheless, even if the Agreement were to be considered in the context of Plaintiffs' Complaint, the Agreement must be rendered both procedurally and substantively unconscionable and, therefore, unenforceable as a matter of law.

A.     **Amazon's "Participation Agreement" is Unconscionable and Unenforceable**

It is unclear, due to the conflicting decisions by various Florida courts, what analytical framework should be used to determine whether a contract is substantively and/or procedurally unconscionable.[1] Some Florida courts require a showing of both substantive and procedural unconscionability. *See, e.g., Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006) ("Our court has said that, to invalidate a contract for unconscionability under Florida law, a court must find that the contract is both procedurally and substantively unconscionable'"). Other Florida Courts, however, appear to reject the procedural-plus-substantive unconscionability requirement as a rule of law or use a balancing or sliding scale approach. *See Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982) (stating that although most courts take a "balancing approach," requiring "a certain quantum of procedural plus a certain quantum of substantive unconscionability," the "procedural-substantive analysis is . . . only a general approach to the unconscionability question and is not a rule of law") (quotation omitted and emphasis added); *Romano v. Manor Care, Inc.*, 861 So.2d 59, 62 (Fla. 4th DCA 2003) (stating "[e]ssentially a sliding scale is invoked" and "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa"); *Hialeah Automotive, LLC v. Basulto*, 22 So.3d 586, 592 (Fla.App. 3 DCA 2009) ("Clearly, if a contract is sufficiently inequitable to meet the test of substantive unconscionability, then it should not be enforced").

Under any analysis, however, Amazon's Agreement is both procedurally and substantively unconscionable, for the following reasons:

1.     **Amazon's Agreement is Procedurally Unconscionable**

---

[1] The 11th Circuit has certified the issue to the Florida Supreme Court. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119 (11th Cir. 2010).

For procedural unconscionability, "a court must look to the manner in which the contract was entered into." *See Murphy*, 944 So. 2d at 1134. Courts must consider 'whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract or whether the terms were merely presented on a 'take-it-or leave-it' basis; and whether he or she had a reasonable opportunity to understand the terms of the contract." *Id.; see also Hialeah Automotive*, 22 So.3d at 592 ("Assuming arguendo that procedural unconscionability is required, that condition should be deemed to be satisfied where, as here, the arbitration clause is a non-negotiated provision contained in a pre-printed form.); *Powertel Inc., v. Bexley,* 743 So.2d 570, 574 (Fla. 1st DCA 1999) (holding that, although not dispositive, the fact that a contract is one of adhesion is significant in determining whether it is procedurally unconscionable). In addition, Florida courts "might find that a contract is procedurally unconscionable if important terms were hidden in a maze of fine print and minimized by deceptive sales practices." *Id.*

Amazon's counsel argues that individuals cannot register to become Sellers on Amazon.com without truly assenting to the Agreement. It is, therefore, necessary to understand the registration process, which is as follows:

First, the registration process requires persons wishing to sell on Amazon.com to have some merchandise to sell. In other words, unless you already have something that you want to sell, you cannot even initiate the registration process. Plaintiffs, like thousands of other Amazon Sellers, had purchased merchandise with the specific intention of selling it, for a modest profit, on Amazon.com. Once the listing is created for the item(s) one wishes to sell, the second step is to create and confirm a "password." The third step requires the entry of personal information, including the proper mailing address, telephone number, et cetera. The telephone number is immediately verified and a "PIN" is generated to allow one to continue with the registration

process. The fourth step requires the entry and "verification" of financial information (e.g., personal credit card number, checking account information, etc.). Finally, you are prompted to "Confirm," which includes checking on the box in front of a sentence stating that you agree to the terms and conditions of the Agreement. The Agreement itself, however, does not appear anywhere on that page – the word "Agreement" needs to be clicked on before the text of the Agreements pops-up in a small window. The text of the ten-page (single-spaced) Agreement is in such a small font that it is difficult to see; moreover, you are not required to click on the word "Agreement" or otherwise read it before clicking on the word "Confirm." If you do not click on "Confirm," you get to walk away without being able to sell your merchandise. Needless to say, no-one walks away.

In *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585 (S.D.N.Y., 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002), the court held that the user did not assent to the terms of the agreement, and emphasized the importance of requiring the user to scroll down to a submerged screen or click on a series of hyperlinks to view the Agreement. Like the impermissible Agreement in *Specht*, Amazon's Agreement is not immediately visible to the user, and the user is permitted to complete registration without reading the terms of the Agreement. Moreover, the length and complexity of the Agreement, as well as its small font, render scrolling down to view and understand all of the terms impermissible.

The different and sometimes seemingly contradictory terms that are buried within the maze of many lengthy paragraphs and subparagraphs are difficult to understand. Plaintiffs are not attorneys, and the Agreement was clearly not written to be easily understood by laypersons. Moreover, even if Plaintiffs could have read and understood the Agreement, the result would have been the same because they would have had no choice but to accept it, since it is presented

on a take-it-or-leave-it basis, and given the lack of any meaningful alternative. *See, e.g., Bragg v. Linden Research Inc.*, 487 F. Supp. 2d 593, 606 (E.D. Pa. 2007) (holding that, "Although Bragg is an experienced attorney . . . he was never presented with an opportunity to use his experience and lawyering skills to negotiate terms different from the ["Terms of Service"] that Linden offered").

Amazon's Agreement is a classic "adhesion contract." *See Pasteur Health Plan, Inc. v. Salazar*, 658 So. 2d 543, 544 (Fla. 3d DCA 1995) (defining adhesion contract as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength . . . relegates to the subscribing party . . . only the opportunity to *adhere* to the contract or *reject* it") (emphasis in the original). While that in itself does not automatically make the Agreement unenforceable, the facts of this case overwhelmingly support Plaintiffs' argument against its enforcement.

Amazon's counsel argues that the traditional principles of contract formation are satisfied in this case. He goes so far as to state that "[t]here is simply no indication that Plaintiffs and Amazon shared anything other than an arms-length business relationship." *See* Amazon's Motion, ¶ 1 at 16. For all the obvious reasons, the "business relationship" between Plaintiffs and Amazon cannot be characterized as an arms-length relationship between parties with equal bargaining power. For example, Plaintiffs had absolutely no way to challenge Amazon's decision to withhold their funds. After Amazon denied Plaintiffs access to their funds without providing Plaintiffs with a reasonable justification, it cut off any communication with Plaintiffs regarding the Plaintiffs' account. *See* Amazon's e-mail, Plaintiffs' Complaint at 45. Amazon never disclosed any details regarding the outcome of its "investigation." Moreover, Amazon refused to release the funds until at least mid-May regardless of the timing and outcome of its "investigation."

In *Gatton v. T-Mobile USA Inc.*, 61 Cal. Rptr. 3d 344, 352 (Cal. Ct. App. 2007), the court stated that, "Oppression [for purposes of rendering a contract provision procedurally unconscionable] arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." Here, Amazon took an unfair advantage of its superior bargaining power. For example, buried within the myriad of legal jargon, are provisions that allow Amazon, "in its sole discretion," to withhold funds, restrict accounts, amend terms retroactively, and also indemnify it from being liable for its own negligent acts. Plaintiffs lacked any meaningful alternatives, since Amazon dominates the online retail business, and is the only retailer that provides a platform for independent Buyers and Sellers to sell just about any type of merchandise for a fixed price.[2] Therefore, under any analytical framework, Amazon's Agreement is procedurally unconscionable.

### 2.    Amazon's "Participation Agreement" is Substantively Unconscionable

Under Florida law, substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are "unreasonable and unfair." *Powertel*, 743 So.2d at 574; *Kohl v. Bay Colony Club Condo., Inc.*, 398 So.2d 865, 868 (Fla. 4th DCA 1981); *Steinhardt*, 422 So.2d at 889 (stating that substantive unconscionability focuses "directly on those terms of the contract itself which amount to an outrageous degree of unfairness to the same contracting party").

In *Steinhardt*, Judge Hubbart explained that "[i]t seems to be established by the authorities that where it is perfectly plain to the court that one party [to a contract] has overreached the other and has gained an unjust and undeserved advantage which it would be

---

[2] While eBay also allows independent third parties to engage in commerce on its website, it is primarily an "auction" website. Moreover, its "User Agreement" contains similar provisions as the ones in Amazon's "Participation Agreement."

inequitable to permit him to enforce, that a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness." *Id.* at 889 (citing *Peacock Hotel, Inc. v. Shipman,* 138 So. 44, 46 (1931)).

In *Bland ex rel. Coker v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006), the court pointed out that a substantively unconscionable contract is one that "'no man in his senses and not under delusion would make on one hand, and [that] no honest and fair man would accept on the other.' It would have been nonsensical for Plaintiffs to take the deal, so to speak, had they understood Amazon's Agreement and its true intention of allowing Amazon to act with impunity, and had they known about Amazon's systematic practice of withholding funds, without any reasonable justification, for three-to-four months at a time.[3]

Florida's jurisprudence lacks a clear precedent on the issue of unconscionable, prewritten e-commerce agreements, such as the one involved here. A number of courts outside of Florida, however, have had to decide cases with facts strikingly similar to those of this case. Most notable is *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1172 (N.D. Cal. 2002). In *Comb*, the court had to determine whether the disputed contract provisions of PayPal's "User Agreement" were unconscionable. The court found a lack of mutuality where the agreement allowed PayPal "at its sole discretion" to restrict accounts, withhold funds, undertake its own investigation of a customer's financial records, close accounts, and procure ownership of all funds in dispute unless and until the customer is "later determined to be entitled to the funds in dispute." *Id.* at 1173-74. The court stressed the fact that PayPal acted unconscionably in requiring that

---

[3] "A party misled as to the utility to be derived from a proposed transaction cannot properly evaluate the true benefits and costs of the deal . . . The presumption that the agreement will lead to a value increasing exchange, therefore, is rebutted." *See* Michael I. Myerson, *Efficient Consumer, The Efficient Consumer Form Contract: Law and Economics Meets the Real World*, 24 Ga. L. Rev. 583, 589 (1990).

arbitration take place in Santa Clara County, California, "PayPal's backyard," and found that PayPal had engaged in an adhesive take-it-or-leave-it contract with customers who lacked meaningful choice. *Id.* Also significant was the fact that the "User Agreement" was "subject to change by PayPal without prior notice (unless prior notice is required by law), by posting of the revised Agreement on the PayPal website." *Id.* The court found that the disputed provisions were an attempt by PayPal "to insulate itself contractually from any meaningful challenge to its alleged practices," and noted that the substantive component is satisfied by "overly harsh or one-sided results that 'shock the conscience.'" *Id.*

Similarly, in *Bragg v. Linden Research Inc.*, 487 F. Supp. 2d 593, 606 (E.D. Pa. 2007), the arbitration provision was buried in a take-it-or-leave-it set of terms presented to customers before they could participate on the site. The provision's lack of mutuality, the costs of arbitration, and the forum selection clause demonstrated that the arbitration clause favored the site operators over the participants; *see also Harris v. Blockbuster, Inc.,* No. 3:09-cv-217-M (N.D. Tex. April 15, 2009) (holding that disputed provision in Blockbuster's Agreement was "illusory" because it allowed Blockbuster to modify the terms of the contract, "at its sole discretion" and "at any time").[4]

Here, Amazon's Agreement contains many of the same elements that made the agreements in the above-mentioned cases substantively unconscionable. For example, ¶ 2 of the Agreement states the following regarding Amazon's right to amend it:

> Amazon Services LLC ("Amazon") reserves the right to change any of the terms and conditions contained in this Participation Agreement or any policies or guidelines governing the Site or Services, at any time and in its sole discretion. Any changes will be effective upon posting of the revisions on the Site.

---

[4] While the case dealt with an arbitration provision, the holding suggests that the agreement terms themselves, not just the arbitration clause, are illusory because Blockbuster reserved the right to unilaterally modify those terms.

Amazon has given itself the unrestricted ability to amend the terms of the Agreement,[5] suspend or terminate accounts at any time and for any reason, to withhold funds in its sole discretion, to use the withheld funds in order to generate income without having to compensate the owners of the funds, and to hold itself unaccountable for its actions regardless of the consequences of those actions.

The important provisions of the Agreement that are material to determining the outcome of any dispute between Amazon and "Amazon Sellers" are heavily tilted in Amazon's favor. Hence, the Agreement is fundamentally unfair. Moreover, Amazon's genuine assent to be bound by the terms of the Agreement is lacking, since Amazon freely and overtly acts in violation of the Agreement when, for example, it routinely withholds Sellers' funds in excess of ninety (90) days.

While Amazon started out as a bookstore, it now sells just about every type of merchandise. It also operates retail websites for numerous companies, such as Target, Timex Corporation, Marks & Spencer, Mothercare, and Lacoste.[6] Until 2006, Amazon was also operating an online store for Toys "R" Us, but that relationship was severed as a result of Amazon's willful breach of its exclusivity agreement with Toys "R" Us.[7]

In fact, Amazon has undertaken a multimillion dollar marketing campaign to accomplish "customer awareness." In its SEC (2008) filing, Amazon stated that it has over 1.3 million

---

[5] A contract requires manifestation of mutual assent and consideration, and the modification of the Agreement without the user's assent and without any consideration from the developer is not an enforceable contract." Restatement (Second) Contracts § 17 (1981).

[6] Source: http://en.wikipedia.org/wiki/Amazon.com

[7] The Judge in that case repeatedly complained about Amazon's ambiguous use of language in memorandums, contract agreements and discussions, stating that "the language as drafted whether intentional or inartful gave Amazon the words to play the game their way." N.J. Super., No. C-96-04, Opinion at.131.

"active seller customers." *See* SEC (2008), Form 10-K.  Amazon describes its main current and potential competitors to include physical-world retailers, catalog retailers, publishers, vendors and distributors, some of which currently sell, or may sell, products or services through the Internet, mail order, or direct marketing.  *Id.*  Plaintiffs had invested time and money to become "Amazon Sellers."  Amazon's representation in its marketing campaign does not disclose that Amazon withholds funds from Sellers who have acted in good faith and have received only positive reviews from the Buyers.  Plaintiffs also had not realized that they would be viewed as "potential competitors," and entrusted Amazon with their personal information and their savings.

The Agreement upon which Amazon now relies to justify its intentional, malicious, deliberate and unlawful conduct is replete with clauses that are purposed to insulate Amazon from any liability for its intentional wrongdoing.  For example, the following is the "Limitation of Liability" clause, buried on p. 8 of the Agreement at ¶ 17(b):

> Amazon will not be liable for any damages of any kind, including, without limitation direct, indirect, incidental, punitive, and consequential damages, arising out of or in connection with the Participation Agreement...

Under Florida law, exculpatory clauses, such as the one in Amazon's Agreement, that attempt to limit one's liability for deceptive or unfair trade practices, are contrary to public policy and unenforceable.  *See. e.g., John's Pass Seafood Co. v. Weber*, 369 So. 2d 616 (Fla. 2d DCA 1979) ("It would be contrary to public policy to enforce an exculpatory clause that attempts to immunize one from liability for breach of a positive statutory duty").

The following is Amazon's termination clause:

> Amazon, in its sole discretion, may terminate this Participation Agreement, access to the Site or the Services, or any current fixed price sales immediately without notice for any reason.  Amazon, in its sole discretion, also may prohibit any Seller from listing items for fixed price sales.

*Id.* at ¶ 21.

Amazon's Agreement allows Amazon to use self-help (e.g., suspend or terminate accounts, withhold funds, et cetera) to resolve disputes, and does not limit it to a particular forum or choice of law, while the Agreement limits the forum and choice of law for the weaker party. Plaintiffs do not have the resources to travel thousands of miles to Seattle, Washington, to litigate their case against Amazon. The provisions at issue here, including the forum selection and choice of law clause, were intended to make it impossible for those with limited resources, such as Plaintiffs, to be able to hold Amazon responsible for its unlawful conduct. Amazon crafted an ominously one-sided agreement that lacks mutuality and is fundamentally unfair. As such, Amazon's Agreement is substantively unconscionable.

For the reasons discussed above, there can be no doubt that, under any analysis, the provisions of Amazon's Agreement, upon which Amazon now relies to deprive Plaintiffs of their day in court, are both procedurally and substantively unconscionable, and unenforceable as a matter of law. Therefore, Plaintiffs respectfully ask the Honorable Court to deny Amazon's Motion.

**B.**     **The Southern District of Florida is the Most Appropriate Forum**

**I.**     **The Plaintiffs' Choice of Forum Is Entitled To Deference**

Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiffs' claims—namely, Amazon's deceptive, unfair and unlawful business practices from which it obtains an ill-gotten profit——have occurred and continue to occur in this district. Contrary to Amazon's assertion, this fact is more than adequately pled in the Complaint.

"The Eleventh Circuit has articulated a policy of being restrictive in transferring actions, stating that the plaintiff's choice of forum should not be disturbed unless the movant can show

14

that it is clearly outweighed by other considerations." *Carl v. Republic Sec. Bank*, 2002 WL

32167730, at *5 (S.D. Fla. 2002) (internal quotation marks and alterations omitted); *see*

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). The Southern District of

Florida is the chosen venue of the named Plaintiffs. Indeed, the balance of the § 1404(a) factors,

including the convenience of non-party witnesses, the place of the alleged wrong, the cost of

obtaining witnesses, and the possibility of delay or prejudice, is strongly in favor of Plaintiffs

and, therefore, Plaintiffs' choice of forum should not be disturbed.

        2.       **The Interest of Justice and Private Convenience and Fairness Factors Favor the Southern District of Florida**

       The private convenience and fairness factors, including ease of access to sources of

proof, relative convenience to parties, and relative convenience to witnesses favor the Southern

District of Florida. Amazon's motion in the alternative to transfer venue to the King County,

Washington, should also be rejected. Amazon's counsel argues that transfer is warranted on the

basis of: the convenience of Amazon's witnesses; the location of relevant documents; and the

convenience of the parties (Amazon). None of these factors, however, when considered in light

of the actual governing law or the facts, weighs in favor of transfer. A change in venue would

not serve the convenience of the witnesses and parties or the interests of justice. Instead, it

would unfairly shift the inconvenience on Plaintiffs. Its most notable impact would be to delay

the proceedings—an impact that would fundamentally prejudice the very core of the Plaintiffs'

claims.

       The fact that transfer is convenient for Amazon and its employees—the only Amazon's

witness known at this time—is irrelevant. This factor looks principally to the convenience of

*non-party* witnesses, not to the parties or their employees. *See, e.g., Mason v. Smithkline*

*Beecham Clinical Laboratories*, 146 F. Supp. 2d 1355, 1362-63 (S.D. Fla. 2001); 15 Charles

Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3851 (2008).

Amazon's motion has not identified any non-party witnesses or addressed potential inconvenience to them of forum choice. This Court has previously stated that, in seeking transfer based on the alleged convenience of the witnesses, the party seeking transfer must "clearly speci[fy] the key witnesses to be called and particularly stat[e] the significance of their testimony." *Mason* at 1355, 1362; *see also* Wright, Miller & Cooper § 3851 ("The party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover"). There is no such showing here.

The location of Amazon's headquarters and employees is of little relevance to the "convenience of witnesses" analysis, which also focuses mainly on the convenience of *non-party* witnesses. This Court has held that "generically identified 'other employees' should not be considered" on venue transfer motion. *Mason* at 1361-63; *see also J.I. Kislak Mortg. Corp. v. Conn. Bank & Trust Co., N.A.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985) ("Courts have been uniform" in denying motions for transfer based on "general allegation[s]" concerning witnesses). Therefore, this factor does weigh in favor of Amazon's request for venue transfer.

The location of documents also does not favor transfer of venue. Neither party has indicated an unwillingness to exchange documents by mail or other delivery. The convenience of witnesses employed by a party is largely irrelevant to the venue analysis. *See* Wright, Miller & Cooper § 3851. Moreover, given the advances in technology, and the fact that Amazon has

16

litigated, and is currently litigating, "hundreds of cases'[8] across the United States, Amazon

undoubtedly has a system in place to handle litigation outside of Seattle, Washington. *See, e.g.,*

*Ivax Corp. v. B. Braun of America, Inc.*, 2001 WL 253253, at *2 (S.D. Fla. 2001) (holding that

the location of data is of little relevance "[i]n the real world of computerization and electronic

transfer of information"). Thus, the location of the documents is of no real importance.

### 3.   Amazon's Forum Selection Clause is Unfair and Unreasonable

Courts must adjudicate motions to transfer based on an "individualized, case-by-case

consideration of convenience and fairness," weighing a number of factors. *Van Dusen v.*

*Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805 (1964).  A moving party carries the burden of having

to show the need for a transfer, if "the forum selection clause is valid, which requires that there

have been no 'fraud, influence, or overweening bargaining power.'" *The Bremen v. Zapata Off-*

*Shore Co.*, 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914-15 (1972).  The burden falls on the Plaintiffs

to demonstrate why they should not be bound by their "contractual choice of forum." *Id.*

Plaintiffs have met their burden here.

Amazon's Agreement is a fundamentally unfair adhesion contract.  For reasons discussed

above, the Agreement, in general (and the forum selection clause in particular), is

unconscionable.  In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94, 111 S. Ct. 1522

(1991), the Court established that forum selection clauses are subject to judicial scrutiny for

fundamental fairness.  In applying the "fundamental fairness standard" the Court introduced in

*Carnival* to the facts of this case, there is sufficient basis to invalidate Amazon's forum selection

clause.  There is ample evidence in this case of bad faith by Amazon.

---

[8] On May 7, 2010, Amazon's counsel, Mr. David Esau, called Plaintiff Albert Segal to request an extension of time to respond to Plaintiffs' Complaint.  When asked why it took Amazon almost two (2) months to retain his firm's services, part of Mr. Esau's explanation was that Amazon is involved in "hundreds of lawsuits."

Moreover, the forum selection clause at issue here violates a strong public policy of this forum. Indeed, it would be inconsistent with the public policy of this forum to enforce Amazon's forum selection clause because of the inequitable effect such enforcement would have. Plaintiffs are entitled to their day in court and do not have the resources to travel to Seattle, Washington, to litigate their claims against Amazon. Plaintiffs never assented to the Agreement, and its enforcement would reward Amazon rather than hold it accountable for its unlawful actions.

Litigating this dispute in Washington would be impossible for Plaintiffs because they lack the financial resources to cover the travel and other related expenses. Therefore, unless this case remains in the Southern District of Florida, Plaintiffs will be deprived of their day in court.

For the foregoing reasons, this Court should deny Amazon's motion to transfer this case to the Western District of Washington.

### C.     Amazon's Argument That Plaintiffs Failed to State A Claim Upon Which Relief May Be Granted is Without Merit

In *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), the Court held that, "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiffs can prove no set of facts that would entitle him to relief." *See also Ronald Olsen v. Charles (Chip) Lane, Jr., etc., et al*, 832 F. Supp. 1525, 1527 (M.D. Fl. 1993) (stating that "[t]he pleadings of a pro se litigant are to be held to less stringent standard than those drafted by an attorney." (quoting *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972)). The pro se litigant must meet the "minimal pleading standard." *Id.*

Plaintiffs have adequately met the required "minimal pleading standard" for all four (4) claims in their Complaint. Moreover, the factual allegations in Plaintiffs' Complaint are specific enough to raise a right of relief beyond any speculative level - a standard the Court introduced in

18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). If, however, this Honorable Court determines that Plaintiffs have not adequately plead a particular claims in their Complaint, Plaintiffs respectfully ask to be allowed the opportunity to amend any such claim.

While Plaintiffs have plead their claims with adequate particularity, well beyond the required "minimal pleading standard," they would still like to respond to Amazon's argument on this issue in greater detail. However, due to the page limitation, only the following point will be stressed here: Amazon's counsel has argued that Amazon cannot be held accountable for unreasonably interfering in the business relationships that are established by independent Buyers and Sellers on Amazon.com. His reasoning is that, under the Agreement, "Amazon is no stranger to the transactions between Plaintiffs and their customers. In fact, since these transactions were all accomplished through the <u>Amazon</u> Marketplace, Amazon necessarily had contractual relationships with Plaintiffs and <u>each</u> of their customers because anyone using the Amazon Marketplace must agree to the Participation Agreement terms and conditions." Amazon's Motion, ¶ 1 at 17 (emphasis in the original).

However, not mentioned is the following provision, which appears in the Agreement under the heading of "Amazon's Role":

> Amazon provides a platform for third-party sellers ("Sellers") and buyers ("Buyers") to negotiate and complete transactions. Amazon is not involved in the actual transaction between Sellers and Buyers and is not the agent of and has no authority for either for any purpose.

Agreement at ¶ 4.

Furthermore, the following paragraph appears in the Agreement, under the heading of "General Release":

> Because Amazon is not involved in transactions between Buyers and Sellers or other participant dealings, if a dispute arises between one or more participants, each of you release Amazon (and its agents and employees) from claims, demands, and

damages (actual and consequential) of every kind and nature, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way connected with such disputes.

*Id.* at ¶ 16.

Amazon procures ownership of Sellers' funds when it determines, in its sole discretion, that disputes "may" occur, thereby leaving Sellers without the funds they need to fulfill their orders. This action only makes it more likely that disputes will occur. *See also* Agreement at ¶ 19 ("Disputes").

Since Amazon merely provides a platform for independent buyers and sellers to develop business relationships, and since it is not involved in the transaction itself and is not liable for any disputes that arise between Buyers and Sellers, it should not be allowed to intentionally and unjustifiably interfere with such business relationships, as it did in this case.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Amazon's Motion be *DENIED* in its entirety.

This 1st day of June, 2010.

Respectfully submitted,

ALBERT SEGAL, Plaintiff, pro se
10490 S.W. 12th Terr., #202
Miami, FL 33174
(908) 510-3584
E-mail: alby1969_98@yahoo.com

MARIANNA CHAPAROVA, Plaintiff, pro se
10490 S.W. 12th Terr., #202
Miami, FL 33174
E-mail: manach101@yahoo.com

## CERTIFICATE OF SERVICE

This is to certify that Plaintiffs, Albert Segal and Marianna Chaparova, have this day

served the foregoing Memorandum in Opposition to Defendant Amazon.com, Inc.'s "Motion to

Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue or, Alternatively,

Motion to Dismiss for Failure to State a Claim" by United States Certified Mail, in a properly-

addressed envelope with adequate postage affixed to:

> David B. Esau, Esq.
> Carlton Fields, P.A.
> City Place Tower, Suite 1200
> 525 Okeechobee Blvd.
> West Palm Beach, FL 33401

This 1st day of June, 2010.

Respectfully submitted,

/s/ _Albert Segal_
ALBERT SEGAL, Plaintiff, pro se.

/s/ _____
MARIANNA CHAPAROVA, Plaintiff, pro se.