IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Cause No. 10-20718-CV-COOKE-BANDSTRA

FILED by ___ D.C.

AUG 2 - 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

ALBERT SEGAL and
MARIANNA CHAPAROVA,

      Plaintiffs,

*vs.*

AMAZON.COM, INC.,

      Defendant.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
AMAZON.COM, INC.'S "MOTION TO DISMISS FOR IMPROPER VENUE OR,
ALTERNATIVELY, MOTION TO TRANSFER VENUE OR, ALTERNATIVELY,
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM"**

      Plaintiffs, Albert Segal and Marianna Chaparova ("Plaintiffs"), on their own behalf, respectfully ask this Court to ***DENY*** Defendant Amazon.com, Inc.'s "Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue or, Alternatively, Motion to Dismiss for Failure to State a Claim" ("Motion").  In support thereof, Plaintiffs state as follows:

**I.**      **INTRODUCTION AND FACTUAL BACKGROUND**

      Defendant Amazon.com, Inc. ("Amazon") holds itself out to the public as the leading internet retailer in the world, and actively markets its website—Amazon.com—as the only internet site through which consumers and third party sellers can buy and sell just about any type of merchandise.  Plaintiffs invested their savings in purchasing books that they reasonably expected to be able to resell, for a modest profit, on Amazon.com.  Plaintiffs made their investment after seeing Amazon's many ads and after being persistently contacted by Amazon via the e-mail regarding opportunities to generate income from selling books on Amazon.com.

In fact, Plaintiffs continue to receive e-mail correspondence from Amazon regarding such opportunities to this day.  Plaintiffs believed Amazon's representations and entrusted Amazon with their savings and their sensitive personal and financial information.  Plaintiffs also believed that they would be able to improve their financial circumstances by being honest and hard-working.  Within a short period of time of becoming "Amazon Sellers," Plaintiffs' hard work began to pay off, as evidenced by their selling record that reflects a steady and consistent increase in fulfilled orders and an overwhelmingly positive feedback from their customers.

What Plaintiffs did not know prior to making their investment, and had absolutely no reason to know, was that Amazon systematically withholds active Sellers' funds for four (4) months at a time, and almost always suspends their accounts shortly thereafter, regardless of customer feedback, and in the absence of any disputes.  It is a fact that Plaintiffs had a near perfect buyer feedback rating and no claims filed against their Seller Account when Amazon decided that it was reasonable to withhold the Plaintiffs' funds for over one hundred (100) days, including funds from settled transactions and those transactions for which positive customer feedback had been received.  This point cannot be overemphasized since it proves that Amazon continues to withhold funds when it knows for a fact that no dispute can arise over those funds.

Amazon's sole justification for its actions is its "Participation Agreement" ("Agreement").  *See* "Declaration of Catherine Ceely" (Decl. "Exhibit 1" at 3), filed as part of Amazon's Motion.  It is stated in Amazon's Motion that, under the Agreement, Amazon is allowed to "temporarily withhold funds if Amazon suspects that the seller is engaged in unscrupulous conduct."  *See, e.g.,* Amazon's Motion, ¶ 1 at 2.  It is also stated in Amazon's Motion that Amazon is allowed to "terminate sellers' access to the Amazon Marketplace for any reason in its sole discretion."  *Id.*  Amazon, however, does not address the fact that it routinely

acts in contravention of its Agreement. As stated in the Plaintiffs' Amended Complaint, Plaintiffs have no agreement with Amazon, written or verbal, that would allow Amazon to deny Plaintiffs access to their funds, without a reasonable justification, for nearly four (4) months.

Plaintiffs filed their lawsuit against Amazon as consumers (having purchased thousands of dollars worth of books from Amazon), and as "Amazon Sellers" (having purchased merchandise for the sole purpose of selling it on Amazon.com), pursuant to, inter alia, Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Plaintiffs' claims arise out of Amazon's fraudulent, deceptive, willful and unlawful conduct that was carefully calculated to deceive and take an unfair advantage of unsuspecting consumers for the sake of profit-making. The FDUTPA was passed to protect the Florida consumers, such as Plaintiffs, from exactly the type of business conduct in which Amazon is currently engaged.

Plaintiffs have very limited resources and, <u>if this Court grants Amazon's motion, Plaintiffs will be denied their day in court.</u> It is certain that, if this Court grants Amazon's motion, Amazon will not be held accountable for the harm it caused Plaintiffs and will continue to act with impunity.

## II.    **ARGUMENT**

Plaintiffs brought this action to remedy Amazon's unlawful acts pursuant to, inter alia, Florida Deceptive and Unfair Trade Practices Act (FDUTPA). *See* Fla. Stat. § 501.202 (stating that "the provisions of this part shall  be construed liberally. . . to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce"); *see also PNR v. Beacon Property Management*, 842 So. 2d 773, 777 (2003) (stating that "an

3

unfair practice [under FDUTPA] is one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'").

Amazon's one and only defense to this lawsuit is its heavily one-sided Agreement that unfairly favors Amazon. The Agreement was intentionally written in such a way as to make it impossible for laypersons to be able to read and understand, and is presented to the unsuspecting consumers on a take-it-or-leave-it basis. The fact is that no-one assents to such an Agreement and its intended consequences knowingly and willingly. Furthermore, the registration process was intentionally designed in such a way that the user is able to complete the lengthy registration process without ever seeing the Agreement. There can be no doubt that Amazon made a carefully calculated decision to have the Agreement written and presented in this way. Amazon's argument that the Agreement represents a "strictly an arms-length, business-to-business contractual relationship" is absurd. *See, e.g.*, Amazon's Motion at 14.

Had Plaintiffs been able to read and understand the Agreement, they still would have been in for a surprise. And, of course, Amazon's own noncompliance with the Agreement further undermines its credibility. Moreover, the Agreement is irrelevant to the Plaintiffs' consumer-related causes of action. Nonetheless, even if the Agreement were to be considered in the context of Plaintiffs' Amended Complaint, the Agreement must be rendered both procedurally and substantively unconscionable and, therefore, unenforceable as a matter of law.

A.     **Amazon's Agreement is Unconscionable and Unenforceable**

It is unclear, due to the conflicting decisions by various Florida courts, what analytical framework should be used to determine whether a contract is substantively and/or procedurally

4

unconscionable.[1] Some Florida courts require a showing of both substantive and procedural unconscionability. *See, e.g.*, *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006). Other Florida Courts, however, appear to reject the procedural-plus-substantive unconscionability requirement as a rule of law or use a balancing or sliding scale approach. *See Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982) (stating that although most courts take a "balancing approach," requiring "a certain quantum of procedural plus a certain quantum of substantive unconscionability," the "procedural-substantive analysis is . . . only a general approach to the unconscionability question and is not a rule of law"); *Hialeah Automotive, LLC v. Basulto*, 22 So.3d 586, 592 (Fla.App. 3 DCA 2009) ("Clearly, if a contract is sufficiently inequitable to meet the test of substantive unconscionability, then it should not be enforced").

Under any analysis, however, Amazon's Agreement is both procedurally and substantively unconscionable, for the following reasons:

### 1.    Amazon's Agreement is Procedurally Unconscionable

For procedural unconscionability, "a court must look to the manner in which the contract was entered into." *See Murphy*, 944 So. 2d at 1134. Courts must consider 'whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract or whether the terms were merely presented on a 'take-it-or leave-it' basis; and whether he or she had a reasonable opportunity to understand the terms of the contract." *Id.; see also Powertel Inc., v. Bexley,* 743 So.2d 570, 574 (Fla. 1st DCA 1999) (holding that, although not dispositive, the fact that a contract is one of adhesion is significant in determining whether it is procedurally unconscionable). In addition, Florida courts "might find that a contract is procedurally

---

[1] The 11th Circuit has certified the issue to the Florida Supreme Court. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119 (11th Cir. 2010).

unconscionable if important terms were hidden in a maze of fine print and minimized by deceptive sales practices." *Id.*

Amazon's counsel argues that individuals cannot register to become Sellers on Amazon.com without truly assenting to the Agreement. It is, therefore, necessary to understand the registration process, which is as follows:

First, unless you already have something that you want to sell, you cannot even initiate the registration process. Plaintiffs, like thousands of other unsuspecting consumers who became "Amazon Sellers," had purchased merchandise with the specific intention of selling on Amazon.com. Once the listing has been created for the item(s) one wishes to sell, the second step is to create and confirm a "password." The third step requires the entry of personal information, including the proper mailing address, telephone number, et cetera. The telephone number is immediately verified and a "PIN" is generated to allow one to continue with the registration process. The fourth step requires the entry and "verification" of financial information (e.g., personal credit card number, checking account information, etc.). Finally, you are prompted to "Confirm," which includes checking on the box in front of a sentence stating that you agree to the terms and conditions of the "Agreement." The inconspicuous text of the ten-page (single-spaced) Agreement, however, does not appear anywhere during the entire registration process. The registration process does not require one to click on the word "Agreement," let alone scroll through and read it, before clicking on the word "Confirm." If you do not click on "Confirm," you get to walk away without being able to sell your merchandise. Needless to say, no-one walks away.

In *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585 (S.D.N.Y., 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002), the court held that the user did not assent to the terms of the agreement,

and emphasized the importance of requiring the user to scroll down to a submerged screen or click on a series of hyperlinks to view the Agreement. Like the impermissible Agreement in *Specht*, Amazon's Agreement is not immediately visible to the user, and the user is permitted to complete registration without reading the terms of the Agreement. Moreover, the length and complexity of the Agreement, as well as its small font, render scrolling down to view and understand all of the terms impermissible.

The different and sometimes seemingly contradictory terms that are buried within the maze of many lengthy paragraphs and subparagraphs are difficult to understand. Plaintiffs are not attorneys, and the Agreement was clearly not written to be easily understood by laypersons. Moreover, even if Plaintiffs could have read and understood the Agreement, the result would have been the same because they would have had no choice but to accept it, since it is presented on a take-it-or-leave-it basis, and given the lack of any meaningful alternative. *See, e.g., Bragg v. Linden Research Inc.*, 487 F. Supp. 2d 593, 606 (E.D. Pa. 2007) (holding that, "Although Bragg is an experienced attorney . . . he was never presented with an opportunity to use his experience and lawyering skills to negotiate terms different from the ["Terms of Service"] that Linden offered").

Amazon's Agreement is a classic "adhesion contract." *See Pasteur Health Plan, Inc. v. Salazar*, 658 So. 2d 543, 544 (Fla. 3d DCA 1995). While that in itself does not automatically make the Agreement unenforceable, the facts of this case overwhelmingly support Plaintiffs' argument against its enforcement. Amazon's counsel argues that the traditional principles of contract formation are satisfied in this case, as if Plaintiffs had an opportunity to negotiate the terms of the Agreement. He goes so far as to state that "this was strictly an arms-length business-to-business relationship." *See* Amazon's Motion at 14. In a truly arms-length business

7

relationship, however, Plaintiffs would have been able to challenge Amazon's decision to withhold their funds, and Amazon would not have been able to deny Plaintiffs access to their funds without having to provide Plaintiffs with a reasonable justification. *See* Amazon's e-mail, Plaintiffs' Complaint at 45. It is also worth noting here that Amazon never disclosed any details regarding the timing and outcome of its "investigation," and that Amazon refused to release the funds until at least mid-May regardless of the timing and outcome of its "investigation."

In *Gatton v. T-Mobile USA Inc.*, 61 Cal. Rptr. 3d 344, 352 (Cal. Ct. App. 2007), the court stated that, "Oppression [for purposes of rendering a contract provision procedurally unconscionable] arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." Here, Amazon took an unfair advantage of its superior bargaining power. For example, buried within the myriad of legal jargon, are provisions that allow Amazon, "in its sole discretion," to withhold funds, restrict accounts, amend terms retroactively, and also indemnify it from being liable for its own negligent acts. Plaintiffs lacked any meaningful alternatives, since Amazon dominates the online retail business, and is the only retailer that provides a platform for independent Buyers and Sellers to sell just about any type of merchandise for a fixed price.[2] Therefore, under any analytical framework, Amazon's Agreement is procedurally unconscionable.

### 2.   **Amazon's Agreement is Substantively Unconscionable**

Under Florida law, substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are "unreasonable and unfair." *Powertel*, 743 So.2d at 574; *Kohl v. Bay Colony Club Condo., Inc.*, 398 So.2d 865, 868 (Fla. 4th DCA 1981);

---

[2] While eBay also allows independent third parties to engage in commerce on its website, it is primarily an "auction" website and does not provide for fixed-price selling. Moreover, its "User Agreement" contains similar provisions as the ones in Amazon's "Participation Agreement."

*Steinhardt*, 422 So.2d at 889 (stating that substantive unconscionability focuses "directly on those terms of the contract itself which amount to an outrageous degree of unfairness to the same contracting party").

In *Steinhardt,* Judge Hubbart explained that "[i]t seems to be established by the authorities that where it is perfectly plain to the court that one party [to a contract] has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce, that a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness." *Id.* at 889 (citing *Peacock Hotel, Inc. v. Shipman,* 138 So. 44, 46 (1931)).

In *Bland ex rel. Coker v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006), the court pointed out that a substantively unconscionable contract is one that "no man in his senses and not under delusion would make on one hand, and [that] no honest and fair man would accept on the other."  It would have been nonsensical for Plaintiffs to take the deal, so to speak, had they understood Amazon's Agreement and its true intention of allowing Amazon to act with impunity, and had they known about Amazon's systematic practice of withholding funds, without any reasonable justification, for four (4) months at a time.  Florida's jurisprudence lacks a clear precedent on the issue of unconscionable, prewritten e-commerce agreements, such as the one involved here.  A number of courts outside of Florida, however, have had to decide cases with facts strikingly similar to those of this case.  Most notable is *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1172 (N.D. Cal. 2002).  In *Comb*, the court had to determine whether the disputed contract provisions of PayPal's "User Agreement" were unconscionable.  The court found a lack of mutuality where the agreement allowed PayPal "at its sole discretion" to restrict accounts, withhold funds, undertake its own investigation of a

customer's financial records, close accounts, and procure ownership of all funds in dispute

unless and until the customer is "later determined to be entitled to the funds in dispute." *Id.* at

1173-74.  The court stressed the fact that PayPal acted unconscionably in requiring that

arbitration take place in Santa Clara County, California, "PayPal's backyard," and found that

PayPal had engaged in an adhesive take-it-or-leave-it contract with customers who lacked

meaningful choice.  *Id.*  Also significant was the fact that the "User Agreement" was "subject to

change by PayPal without prior notice (unless prior notice is required by law), by posting of the

revised Agreement on the PayPal website."  *Id.*  The court found that the disputed provisions

were an attempt by PayPal "to insulate itself contractually from any meaningful challenge to its

alleged practices," and noted that the substantive component is satisfied by "overly harsh or one-

sided results that 'shock the conscience.'"  *Id.*

Similarly, in *Bragg v. Linden Research Inc.*, 487 F. Supp. 2d 593, 606 (E.D. Pa. 2007),

the arbitration provision was buried in a take-it-or-leave-it set of terms presented to customers

before they could participate on the site.  The provision's lack of mutuality, the costs of

arbitration, and the forum selection clause demonstrated that the arbitration clause favored the

site operators over the participants; *see also Harris v. Blockbuster, Inc.,* No. 3:09-cv-217-M

(N.D. Tex. April 15, 2009) (holding that disputed provision in Blockbuster's Agreement was

"illusory" because it allowed Blockbuster to modify the terms of the contract, "at its sole

discretion" and "at any time").

Here, Amazon's Agreement contains many of the same elements that made the

agreements in the above-mentioned cases substantively unconscionable.  For example, ¶ 2 of the

Agreement states the following regarding Amazon's right to amend it:

> Amazon Services LLC ("Amazon") reserves the right to change any of the terms
> and conditions contained in this Participation Agreement or any policies or

guidelines governing the Site or Services, at any time and in its sole discretion. Any changes will be effective upon posting of the revisions on the Site.

Amazon has given itself the unrestricted ability to amend the terms of the Agreement,[3] suspend or terminate accounts at any time and for any reason, to withhold funds in its sole discretion, to use the withheld funds in order to generate income without having to compensate the owners of the funds, and to hold itself unaccountable for its unlawful actions regardless of the consequences of those actions.

The important provisions of the Agreement that are material to determining the outcome of any dispute between Amazon and "Amazon Sellers" are heavily tilted in Amazon's favor. Hence, the Agreement is fundamentally unfair. Moreover, for the above-stated reasons, Amazon's genuine assent to be bound by the terms of the Agreement is lacking.

While Amazon started out as a bookstore, it now sells just about every type of merchandise. It also operates retail websites for numerous companies, such as Target, Timex Corporation, Marks & Spencer, Mothercare, and Lacoste.[4] Until 2006, Amazon was also operating an online store for Toys "R" Us, but that relationship was severed as a result of Amazon's willful breach of its exclusivity agreement with Toys "R" Us.[5]

In fact, according to Amazon, it has undertaken a multimillion dollar marketing campaign to accomplish "customer awareness." In its SEC (2008) filing, Amazon stated that it has over 1.3 million "active seller customers." *See* SEC (2008), Form 10-K. Amazon describes its main

---

[3] A contract requires manifestation of mutual assent and consideration, and the modification of the Agreement without the user's assent and without any consideration from the developer is not an enforceable contract." Restatement (Second) Contracts § 17 (1981).
[4] Source: http://en.wikipedia.org/wiki/Amazon.com
[5] The Judge in that case repeatedly complained about Amazon's ambiguous use of language in memorandums, contract agreements and discussions, stating that "the language as drafted whether intentional or inartful gave Amazon the words to play the game their way." N.J. Super., No. C-96-04, opinion at.131.

current and potential competitors to include physical-world retailers, catalog retailers, publishers,

vendors and distributors, some of which currently sell, or may sell, products or services through

the Internet, mail order, or direct marketing. *Id.* Plaintiffs had invested time and money to

become "Amazon Sellers" without knowing that they would be viewed and treated by Amazon

as "potential competitors." Amazon's marketing campaign does not disclose this information,

just as it does not disclose the fact that Amazon routinely withholds funds from Sellers who have

acted in good faith and have received only positive reviews from their customers.

The Agreement upon which Amazon now relies to justify its intentional, malicious,

deliberate and unlawful conduct is replete with clauses that are purposed to insulate Amazon

from any liability for its intentional wrongdoing. *See, e.g.*, the "Limitation of Liability" clause,

which is buried on p. 8 of the Agreement at ¶ 17(b).

Under Florida law, exculpatory clauses, such as the one in Amazon's Agreement, that

attempt to limit one's liability for deceptive or unfair trade practices, are contrary to public

policy and unenforceable. *See. e.g.*, *John's Pass Seafood Co. v. Weber*, 369 So. 2d 616 (Fla. 2d

DCA 1979) ("It would be contrary to public policy to enforce an exculpatory clause that attempts

to immunize one from liability for breach of a positive statutory duty").

The following is Amazon's termination clause:

> Amazon, in its sole discretion, may terminate this Participation Agreement, access
> to the Site or the Services, or any current fixed price sales immediately without
> notice for any reason. Amazon, in its sole discretion, also may prohibit any Seller
> from listing items for fixed price sales.

*Id.* at ¶ 21.

Amazon's Agreement allows Amazon to use self-help (e.g., suspend or terminate

accounts, withhold funds, et cetera) to resolve disputes, and does not limit it to a particular forum

or choice of law, while the Agreement limits the forum and choice of law for the weaker party.

Plaintiffs do not have the resources to travel thousands of miles to Seattle, Washington, to litigate their case against Amazon.  The provisions at issue here, including the forum selection and choice of law clause, were intended to make it impossible for those with limited resources, such as Plaintiffs, to be able to hold Amazon responsible for its unlawful conduct.  Amazon crafted an ominously one-sided agreement that lacks mutuality and is fundamentally unfair.  As such, Amazon's Agreement is substantively unconscionable.

For the reasons discussed above, there can be no doubt that, under any analysis, the provisions of Amazon's Agreement, upon which Amazon now relies to deprive Plaintiffs of their day in court, are both procedurally and substantively unconscionable, and unenforceable as a matter of law.  Therefore, Plaintiffs respectfully ask the Honorable Court to deny Amazon's Motion.

### B.       The Southern District of Florida is the Most Appropriate Forum

#### I.       The Plaintiffs' Choice of Forum Is Entitled To Deference

Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiffs' claims—namely, Amazon's fraudulent, deceptive, unfair and unlawful business practices from which it obtains an ill-gotten profit—have occurred and continue to occur in this district.  Contrary to Amazon's assertion, this fact is more than adequately pled in the Complaint.

"The Eleventh Circuit has articulated a policy of being restrictive in transferring actions, stating that the plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." *Carl v. Republic Sec. Bank*, 2002 WL 32167730, at *5 (S.D. Fla. 2002) (internal quotation marks and alterations omitted); *see Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).  The Southern District of

Florida is the chosen venue of the named Plaintiffs.  Indeed, the balance of the § 1404(a) factors, including the convenience of non-party witnesses, the place of the alleged wrong, the cost of obtaining witnesses, and the possibility of delay or prejudice, is strongly in favor of Plaintiffs and, therefore, Plaintiffs' choice of forum should not be disturbed.

2.    <u>The Interest of Justice and Private Convenience and Fairness Factors</u><br><u>Favor the Southern District of Florida</u>

The private convenience and fairness factors, including ease of access to sources of proof, relative convenience to parties, and relative convenience to witnesses favor the Southern District of Florida.  Amazon's motion in the alternative to transfer venue to the King County, Washington, should also be rejected.  Amazon's counsel argues that transfer is warranted on the basis of: the convenience of Amazon's witnesses; the location of relevant documents; and the convenience of the parties (Amazon).  None of these factors, however, when considered in light of the actual governing law or the facts, weighs in favor of transfer.  A change in venue would not serve the convenience of the witnesses and parties or the interests of justice.  Instead, it would unfairly shift the inconvenience on Plaintiffs.  Its most notable impact would be to delay the proceedings—an impact that would fundamentally prejudice the very core of the Plaintiffs' claims.

The fact that transfer is convenient for Amazon and its employees—the only Amazon's witness known at this time—is irrelevant.  This factor looks principally to the convenience of *non-party* witnesses, not to the parties or their employees.  *See, e.g., Mason v. Smithkline Beecham Clinical Laboratories*, 146 F. Supp. 2d 1355, 1362-63 (S.D. Fla. 2001); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3851 (2008).

Amazon's motion has not identified any non-party witnesses or addressed potential inconvenience to them of forum choice. This Court has previously stated that, in seeking transfer based on the alleged convenience of the witnesses, the party seeking transfer must "clearly speci[fy] the key witnesses to be called and particularly stat[e] the significance of their testimony." *Mason* at 1355, 1362; *see also* Wright, Miller & Cooper § 3851 ("The party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover"). There is no such showing here.

The location of Amazon's headquarters and employees is of little relevance to the "convenience of witnesses" analysis. *See, e.g., Mason* at 1361-63; *see also J.I. Kislak Mortg. Corp. v. Conn. Bank & Trust Co., N.A.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985). The location of documents also does not favor transfer of venue. Neither party has indicated an unwillingness to exchange documents by mail or other delivery. The convenience of witnesses employed by a party is largely irrelevant to the venue analysis. *See, e.g.* Wright, Miller & Cooper § 3851. Moreover, given the advances in technology, and the fact that Amazon conducts business in Florida and has litigated cases here and in other states, Amazon undoubtedly has a system in place to handle litigation outside of Seattle, Washington. *See, e.g., Ivax Corp. v. B. Braun of America, Inc.*, 2001 WL 253253, at *2 (S.D. Fla. 2001) (holding that the location of data is of little relevance "[i]n the real world of computerization and electronic transfer of information"). Thus, the location of the documents is of no real importance.

### 3.  Amazon's Forum Selection Clause is Unfair and Unreasonable

Courts must adjudicate motions to transfer based on an "individualized, case-by-case consideration of convenience and fairness," weighing a number of factors. *Van Dusen v.*

*Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805 (1964). A moving party carries the burden of having to show the need for a transfer, if "the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power.'" *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914-15 (1972). The burden falls on the Plaintiffs to demonstrate why they should not be bound by their "contractual choice of forum." *Id.* Plaintiffs have met their burden here.

Amazon's Agreement is a fundamentally unfair adhesion contract. For reasons discussed above, the Agreement, in general (and the forum selection clause in particular), is unconscionable. In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94, 111 S. Ct. 1522 (1991), the Court established that forum selection clauses are subject to judicial scrutiny for fundamental fairness. In applying the "fundamental fairness standard" the Court introduced in *Carnival* to the facts of this case, there is sufficient basis to invalidate Amazon's forum selection clause. There is ample evidence in this case of bad faith by Amazon.

Moreover, the forum selection clause at issue here violates a strong public policy of this forum. Indeed, it would be inconsistent with the public policy of this forum to enforce Amazon's forum selection clause because of the inequitable effect such enforcement would have. Plaintiffs are entitled to their day in court and do not have the resources to hire an attorney in Washington, or to travel to Washington in order to litigate their claims against Amazon. Plaintiffs never assented to the Agreement, and its enforcement would reward Amazon rather than hold it accountable for its unlawful actions.

Litigating this dispute in Washington would be impossible for Plaintiffs because they lack the financial resources to cover the travel and other related expenses. Therefore, unless this case remains in the Southern District of Florida, Plaintiffs will be deprived of their day in court.

**4.    The Choice-of-Law Provision is Unenforceable Because It Was Included in the Agreement to Protect Amazon From the Consequences of Its Unlawful Conduct**

The choice-of-law provision in the Agreement was included by Amazon to protect itself from the consequences of its unlawful conduct, which was known to Amazon, but not to Plaintiffs. Hence, it cannot fairly be said that the choice-of-law provision was not also procured through fraud. Moreover, unlike Florida, Washington does not appear to recognize an exception to the economic loss rule in the context of fraudulent inducement claims. *See, e.g.*, Amazon's Motion n.5 at 12. There can be no doubt that Amazon now seeks to enforce the choice-of-law provision to avoid having to answer for its intentional wrongdoing. It is well established that, as a matter of public policy, Florida will not enforce parties' contractual attempts to exempt themselves from liability for their own fraud.

This Court's decision in *HTP, Ltd. v. Lineas Aereas Costarricenses*, 685 So. 2d 1238 (Fla. 1996), illustrates the Florida courts' aversion to fraud. In HTP, the Court determined that a cause of action for fraud in the inducement of a settlement agreement is a tort independent of the contract, not barred by any of the economic loss rule concerns that arise in purely contractual litigation. In so holding, the Court quoted with approval the portion of Judge Altenbernd's dissent in *Woodson v. Martin*, 663 So.2d 1327 (Fla. 2d DCA 1995), which recognized that claims for fraud serve an important societal interest: [T]he interest protected by fraud is society's need for true factual statements in important human relationships, primarily commercial or business relationships. In keeping with its history of refusing to countenance fraud, Florida law has long provided Florida litigants access to the courts to have their fraud claims determined by a trier of fact. See, e.g., *Florida East Coast Railway Co. v. Thompson*, 111 So. 525 (Fla. 1927)

(stating that "[a] contract procured through fraud is never binding upon an innocent party thereto").

For the foregoing reasons, this Court should deny Amazon's motion to transfer this case to the Western District of Washington.

### C.    Amazon's Argument That Plaintiffs Failed to State A Claim Upon Which Relief May Be Granted is Without Merit

In *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), the Court held that, "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief." *See also Ronald Olsen v. Charles (Chip) Lane, Jr., etc., et al*, 832 F. Supp. 1525, 1527 (M.D. Fl. 1993) (stating that "[t]he pleadings of a pro se litigant are to be held to less stringent standard than those drafted by an attorney." (quoting *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972)). The pro se litigant must meet the "minimal pleading standard." *Id.*

While Plaintiffs have pled their claims with adequate particularity, well beyond the "minimal pleading standard," they would still like to provide a detailed response to Amazon's argument on this issue. However, since Plaintiffs are restricted to the twenty (20) page limit to respond to Amazon's Motion, Plaintiffs are forced to limit their response on this issue as follows:

To maintain a FDUTPA claim, a party must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Rollins, Inc. v. Orkin Exterm. Co., Inc.*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). The elements of a FDUTPA claim in paragraphs 25 through 43 ("Count I") of Plaintiffs' Amended Complaint are adequately pled. In addition, the facts are specifically stated to support these elements in paragraphs 8 through 24 ("Factual Allegations").

Likewise, the Plaintiffs' Amended Complaint alleged all of the facts necessary to state causes of action for fraud in the inducement under Florida law and, at the motion to dismiss

stage, "it is axiomatic that those allegations are taken as true." *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). It is mind-boggling that Amazon can now argue that it did not have a duty to be truthful and to disclose what it in fact concealed, which ultimately devalued the investment Plaintiffs made in becoming "Amazon Sellers," and which caused Plaintiffs to suffer economic and non-economic damages, including harm resulting from damage done to the Plaintiffs' reputation. An arrangement in which one party puts up funds for an investment, and another has a responsibility for managing the investment, is a classic example of a fiduciary relation. Moreover, the duty to disclose here arises not just from the parties' fiduciary relations but from the Amazon's awareness that Plaintiffs were acting on the basis of a false belief. Amazon's argument to the contrary is simply wrong.

Amazon's argument that the Plaintiffs' claims should be dismissed is supported by false statements and mischaracterizations of the facts of this case. For example, it is stated in Amazon's Motion that Plaintiffs based their fraudulent inducement claim on "nothing more than an on-line tutorial," and that "[a]nyone who viewed that tutorial and wanted to participate in the Marketplace necessarily would have been re-directed to the comprehensive Participation Agreement." *See* Amazon's Motion ¶ 1 at 15. The fact is that what Amazon now calls a "tutorial" is in fact marketing of its website. Also, the statement that the viewer is "re-directed" to the Agreement is blatantly false. Moreover, Plaintiffs used that ad to point out the types of representations Amazon makes in its marketing campaign, and did not base any of their claims on that one ad alone.

Amazon argues in its Motion that it cannot be held accountable for unreasonably interfering in the business relationships that are established by independent Buyers and Sellers

on Amazon.com, and conveniently ignores the following provision that appears in the

Agreement under the heading of "Amazon's Role":

> Amazon provides a platform for third-party sellers ("Sellers") and buyers ("Buyers") to negotiate and complete transactions. Amazon is not involved in the actual transaction between Sellers and Buyers and is not the agent of and has no authority for either for any purpose.

Agreement at ¶ 4; *see also* "General Release" at ¶ 16.

Amazon procures ownership of Sellers' funds when it determines, in its sole discretion,

that disputes "may" occur, thereby leaving Sellers without the funds they need to fulfill their

orders. This action only makes it more likely that disputes will occur. *See also* Agreement at ¶

19 ("Disputes").

Since Amazon merely provides a platform for independent buyers and sellers to develop

business relationships, and since it is not involved in the transaction itself and is not liable for

any disputes that arise between Buyers and Sellers, it should not be allowed to intentionally and

unjustifiably interfere with such business relationships, as it did in this case.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Amazon's Motion be

*DENIED* in its entirety.

This 2nd day of August, 2010.

Respectfully submitted,

ALBERT SEGAL, Plaintiff, *pro se*
10490 S.W. 12th Terr., #202
Miami, FL 33174
(908) 510-3584
E-mail: alby1969_98@yahoo.com

MARIANNA CHAPAROVA, Plaintiff, *pro se*
10490 S.W. 12th Terr., #202
Miami, FL 33174
E-mail: manach101@yahoo.com

## CERTIFICATE OF SERVICE

This is to certify that Plaintiffs, Albert Segal and Marianna Chaparova, have this day served upon Amazon's counsels of record the foregoing Memorandum in Opposition to Defendant Amazon.com, Inc.'s "Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue or, Alternatively, Motion to Dismiss for Failure to State a Claim" by electronic mail and United States Certified Mail.

This 2nd day of August, 2010.

Respectfully submitted,

ALBERT SEGAL, Plaintiff, *pro se*

MARIANNA CHAPAROVA, Plaintiff, *pro se*

## SERVICE LIST

David B. Esau, Esq.
Carlton Fields, P.A.
City Place Tower, Suite 1200
525 Okeechobee Blvd.
West Palm Beach, FL 33401