UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-CIV-20718-COOKE/BANDSTRA

ALBERT SEGAL, and
MARIANNA CHAPAROVA,

      Plaintiffs,

- vs. -

AMAZON.COM, INC.,

      Defendant.

_____/

**DEFENDANT AMAZON.COM'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS OR TRANSFER VENUE**

Defendant Amazon.com, Inc. ("Amazon") hereby submits this Reply in Support of its

Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue or,

Alternatively, Motion to Dismiss for Failure to State a Claim [D.E. 26], and states:

**I.**       **MEMORANDUM OF LAW**

The Amazon Marketplace Participation Agreement is valid and enforceable.  In their

Opposition to Amazon's Motion to Dismiss or Transfer ("Opp.") [D.E. 29], Plaintiffs

acknowledge that, to sign up for the Amazon Marketplace, the user is required to click a

"Confirm" button "which includes checking on the box in front of a sentence stating that you

agree to the terms and conditions of the [Participation] Agreement."  Opp., at 6.  Plaintiffs had

the opportunity to carefully and thoroughly review that Agreement before clicking "Confirm,"

and were not pressured to use the Marketplace in any way.  As literally dozens of federal and

state courts around the country have held, these <u>exact</u> types of agreement, containing <u>nearly</u>

<u>identical</u> forum selection clauses, are valid, enforceable, and not unconscionable.

17218145.1

A.      **The Participation Agreement is Valid, Enforceable, and Not Unconscionable**

1.      The Participation Agreement is Not Procedurally Unconscionable

The Participation Agreement is what is known as a "clickwrap" agreement.  A clickwrap agreement appears on an internet webpage and requires that a user consent to terms and conditions by clicking on a dialogue box on the screen in order to proceed with the internet transaction. *See Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002).  Courts apply traditional principles of contract law to clickwrap agreements, and focus on whether the plaintiffs had reasonable notice of and manifested assent to the agreement.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (distinguishing *Specht* based on notice of the terms).  As with any binding contract, failure to read a clickwrap agreement will not excuse compliance with its terms.  *See Nat'l Bank of Wash. v. Equity Investors,* 81 Wn.2d 886, 506 P.2d 20 (1973) (parties have a duty to read the contracts they sign); *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006) (same); *Burcham v. Expedia, Inc.*, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009) (clickwrap agreements are enforceable regardless of whether the plaintiff actually read the terms).

Courts around the country have held that forum selection clauses in clickwrap agreements – such as the one here – are valid, enforceable, and not unconscionable. *See, e.g., Tricome v. Ebay, Inc.*, 2009 WL 3365873 (E.D. Pa. Oct. 19, 2009) (finding forum selection clause in a clickwrap agreement valid and enforceable under nearly identical factual circumstances as here); *Novak v. Overture Servs., Inc.*, 309 F.Supp.2d 446, 451 (E.D.N.Y. 2004) (enforcing forum selection clause in a clickwrap agreement where, like here, the plaintiff was required to click a button indicating acceptance in order to proceed); *Person v. Google*, 456 F.Supp.2d 488, 493 (S.D.N.Y. 2006) (enforcing forum selection clause where "every customer must click on a box

acknowledging that they agree to the terms and conditions of Defendant's contract"); *Universal Grading Service v. eBay, Inc.*, 2009 WL 2029796, at *11 (E.D.N.Y. June 10, 2009) (enforcing forum selection clause in clickwrap agreement); *Meier v. Midwest Recreational Clearinghouse, LLC,* 2010 WL 2738921 (E.D. Cal. July 12, 2010) (granting motion to dismiss for improper venue based on forum selection clause in clickwrap agreement despite Plaintiff's contentions that she did notice or understand the import of the clause); *Burcham*, 2009 WL 586513 (granting motion to dismiss *pro se* complaint for improper venue based on forum selection clause in clickwrap agreement).[1]

Notwithstanding the myriad cases that are directly on point with the facts here, and the strong presumption of validity afforded forum selection clauses in general (described in detail in Amazon's Motion), Plaintiffs argue that the Participation Agreement here is procedurally unconscionable because they did not have actual knowledge of the terms.  That is, despite admittedly going through a five-step registration process and clicking the "Confirm" button which, in Plaintiffs' own words, "includes checking on the box in front of a sentence stating that you agree to the terms and conditions of the Agreement" [Opp., at 6], Plaintiffs argue now that

---

[1] *See also Feldman v. Google*, 2007 WL 966011 (E.D. Pa. March 29, 2007) (enforcing forum selection clause in clickwrap agreement); *In Re RealNetworks, Inc. Privacy Litigation*, 2000 WL 631341, at *1, 5-6 (N.D. Ill. May 11, 2000) (enforcing clickwrap agreement because reasonable notice of terms existed where the user had to agree to the terms in order to install software and the agreement came in a pop-up window, like here); *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1010-11 (D.C. Cir. 2002) (adequate notice was provided of clickwrap agreement terms where users had to click "Accept" to agree to the terms in order to subscribe, and an admonition was presented to read the agreement); *Brodsky v. Match.com LLC*, 2009 WL 3490277 (S.D.N.Y. Oct. 28, 2007) (enforcing forum selection clause in clickwrap agreement); *Tradecomet.com LLC v. Google, Inc.*, 2010 WL 779325 (S.D.N.Y. Mar. 5, 2010) (same); *Southwest Airlines Co. v. Boardfirst*, LLC, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) (enforcing clickwrap agreement); *Davidson & Associates, Inc. v. Internet Gateway*, 334 F.Supp.2d 1164, 1176 (E.D. Mo. 2004) (clickwrap agreements, like shrinkwrap agreements, are valid and enforceable); *DeJohn v. The .TV Corp. Int'l*, 245 F.Supp.2d 913, 919 (N.D. Ill. 2003) (enforcing clickwrap agreement); *I.Lan Systems, Inc. v. Netscout Service Level Corp.*, 183 F.Supp.2d 328, 338 (D. Mass. 2002) (same); *Caspi v. Microsoft Network, L.L.C.*, 323 N.J. Super. 118, 122, 125-27 (App. Div. 1999) (same).

they should not be bound by the terms of the Participation Agreement because the agreement is "not immediately visible to the user, and the user is permitted to complete registration without reading the terms of the Agreement." *Id*., at 7.

In support of this argument, Plaintiffs cite *Specht v. Netscape Comms. Corp.*, 306 F.3d at 20, 31. The facts in *Specht*, however, are easily distinguishable from this case. In *Specht*, the internet users were urged to click a button to download free software, but there was no visible indication that clicking the button meant acceptance of a proposed contract. *Id*., at 23, 32. The only reference to a contract was located in text visible if the user scrolled down to the next screen, which was "submerged." *Id.*, at 23, 31-32. Even if the user did scroll down, the terms were not immediately displayed. *Id*. at 23. Users would have had to click on a hyperlink, which would take the user to a separate webpage entitled "License & Support Agreements." *Id*., at 23-24. Only on that webpage was a user informed that she must agree to the terms. *Id*., at 24. On these facts, the Second Circuit concluded that there was not sufficient or reasonably conspicuous notice of the terms for the plaintiffs to manifest assent. *Id*., at 32, 35.[2]

Unlike the agreement in *Specht*, Amazon's Participation Agreement requires the would-be user (such as Plaintiffs here) to undertake a multi-step registration process, and to click a highly visible and easily noticeable "Confirm" button, which, according to Plaintiffs, includes affirmatively checking a box stating that the user agrees to the terms and conditions of the Participation Agreement. If the user does not "Confirm" that she agrees to the terms and conditions, she cannot activate her account or sell merchandise on the Amazon Marketplace. *See*

---

[2] The Second Circuit was careful to differentiate the procedures in *Specht* from clickwrap agreements (like the one in this case), which <u>do</u> provide sufficient notice. *Specht*, at 22 n. 4, 32, 33. Notably, assent was not at issue with respect to a second agreement addressed in *Specht* where, like here, users were "not permitted to complete the installation until they had clicked on a 'Yes' button to indicate that they had accepted all the license terms." *Id.*, at 21-22, 36.

Ceely Decl., at ¶ 2.  Thus, like the dozens of other cases around the country finding that nearly identical "Confirm" procedures are sufficient to manifest asset to the terms of a clickwrap contract -- irrespective of whether the user elected to actually read or scroll through the entire agreement -- the clear and unambiguous Participation Agreement here is valid, enforceable, and not unconscionable.  *See Burcham,* 2009 WL 586513 (clickwrap agreement is enforceable regardless of whether the plaintiff actually clicked on or read the terms); *Meier,* 2010 WL 2738921 (clickwrap agreement is enforceable even if plaintiff failed to notice or understand the import of the clause); *see also* cases cited at footnote 1 and surrounding text.

Moreover, although the Participation Agreement is standardized and was drafted by Amazon, it is beyond dispute that these factors do not render a contract unconscionable.  In the leading case on the enforceability of adhesion contracts, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Supreme Court enforced a forum selection clause printed in small print on the back of a cruise ship ticket.  Because the nature of the cruise ship business necessarily opened the defendant-company to the possibility of litigation in several fora, the cruise line had a justifiable "interest in limiting the fora in which it potentially could be subject to suit."  *Id.*, at 593; *see also Meier,* 2010 WL 2738921, at *3 (finding forum selection clause valid because internet companies, like cruise lines, have a strong interest in the fora in which they are sued, and because they presumably would be able to pass on to their customers the reduction in costs created by the forum selection clause).

The Participation Agreement here is not a contract of adhesion.  *Tricome*, 2009 WL 3365873, at *3 (concluding that a similar user agreement was not a contract of adhesion).  Even if it were an adhesion contract, however, it would fall squarely within the *Carnival Cruise Lines* and *Meier* precedent.  Amazon is a global website with tens of millions of users around the

world.  Like Carnival Cruise Lines, it too has a legitimate and cognizable "interest in limiting the fora in which it potentially could be subject to suit."

Additionally, Plaintiffs do not (and cannot) allege that they were prevented from reading the Participation Agreement, or that they were coerced into accepting the Agreement or using the Amazon Marketplace.  Indeed, Plaintiffs easily could have chosen not to register for or use Amazon's services.  *See Carnival*, 499 U.S. at 592 (plaintiffs "retained the option of rejecting the contract with impunity"); *Universal Grading Service*, 2009 WL 2029796 (forum selection clause valid where plaintiffs could have chosen not to register to use eBay's services); *Burcham,* 2009 WL 586513 at *5 (forum selection clause valid where plaintiff was not forced to use the services provided by the defendant).  This alone is fatal to Plaintiffs' unconscionability argument.  *Id*.

Nor do Plaintiffs legitimately argue that there is no meaningful alternative to the Amazon Marketplace.  In fact, Plaintiffs acknowledge that eBay provides a similar internet marketplace [*see* Opp., at n. 2],[3] and that Amazon's other competitors include "physical-world retailers, catalog retailers, publishers, vendors and distributors."  Opp., at 12.  Plaintiffs easily could have chosen any number of these (or other) alternatives, but affirmatively sought out Amazon's services, and therefore agreed to be bound by the clear and unambiguous terms of the Participation Agreement and the forum selection clause.  *Burcham,* 2009 WL 586513 at *5 (plaintiff had other choices, but agreed to be bound by the contract with the defendant); *Universal Grading Service,* 2009 WL 2029796 (finding similar forum selection clause clear, unambiguous, and easily understandable).

A recent case involving one such comparable internet marketplace is on all fours with the

---

[3] As Plaintiffs note, eBay uses similar contracts containing similar forum selection clauses.  [Opp. at n. 2].  These forum selection clauses have been upheld and found <u>not unconscionable</u> on numerous occasions.  *See, e.g., Universal Grading Service*, 2009 WL 2029796; *Tricome*, 2009 WL 3365873; *In re eBay, Inc.*, 2010 WL 2695803, *3 (Tex. App. Ct. July 8, 2010).

facts and legal issues in this case.  *See Tricome,* 2009 WL 3365873.  Under strikingly similar circumstances, and considering strikingly similar arguments as here, the *Tricome* court found that the eBay internet marketplace user agreement was not unconscionable because the plaintiff voluntarily, and without necessity, agreed to the user agreement to enhance his business opportunities.  Just like here, the plaintiff had the opportunity to read the user agreement, he clicked on an "I accept the user agreement" button before being permitted to proceed, and eBay did not engage in high pressure tactics or put external pressure on the plaintiff to accept the agreement.  The Court found that the eBay user agreement and forum selection clause were valid, enforceable, and not unconscionable.  *Id.*, at *3.  This Court should apply the same sound and considered reasoning as the *Tricome* court (and the many cases like it).

> 2.    The Participation Agreement and Forum Selection Clause Are Not Substantively Unconscionable

The Participation Agreement and forum selection clause are also not substantively unconscionable.  Substantive unconscionability focuses on whether the contract terms contain an outrageous degree of unfairness such that they shock the conscience.  *See Univera, Inc. v. Terhune*, 2009 WL 3877558, at *3 (W.D. Wash. Nov. 18, 2009) (finding no unconscionability, and stating that that "the commercial nature of the contract should be considered when examining a potentially unconscionable clause or contract"); *Pendergast*, 592 F.3d at 1139.

Plaintiffs argue that the Participation Agreement contains unilateral clauses, including the forum selection clause, the warranty and liability disclaimers, the provision allowing Amazon to withhold funds for a limited period while it investigates unscrupulous seller conduct (such as here), and the provision allowing Amazon to amend the agreement at its discretion (although Plaintiffs do not allege that they were subject to any such amendment).  In support of their

arguments, Plaintiffs cite *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D. Cal. 2002) and *Bragg v. Linden Research, Inc.*, 487 F.Supp.2d 593 (E.D. Pa. 2007). Those cases are inapposite.

Unlike in *Comb* and *Bragg*, the forum selection clause here permits small claims lawsuits (*i.e.,* those where less than $7,500 is at stake) to proceed in any jurisdiction (including Florida). *See id.*, at ¶ 18. The absence of such a clause (coupled with the prohibitive cost of arbitration) is one of the primary reasons the *Comb* and *Bragg* courts found the contracts in those cases substantively unconscionable. *See Comb*, at 1177; *Bragg*, at 610. Moreover, while certain provisions in the Amazon Participation Agreement authorize Amazon to act in its discretion, those terms are not substantively unconscionable because, among other things, they are intended for the protection of buyers, and they do not allow for an indefinite hold on funds (as in *Comb*), but rather limit the withholding period to, at most, 90 days. Participation Agreement, at 5(h).[4]

More importantly, the forum selection clauses in *Comb* and *Bragg* were not severable from the unconscionable arbitration clauses. Here, the forum selection clause is severable from the rest of the allegedly unenforceable provisions, if any, in the Participation Agreement. The severability clause in the Participation Agreement provides that:

> "[i]f any provision of this Participation Agreement shall be deemed unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from these terms and conditions and shall not affect the validity and enforceability of any remaining provisions."

Participation Agreement, at ¶ 22(c). Thus, the only question relevant to Amazon's Motion is whether the forum selection clause is valid and enforceable. It is.

The forum selection clause here contains no "one-sidedness," as all parties are equally bound by it. Nor does the requirement that large lawsuits (*i.e.,* those exceeding $7,500) against

---

[4] *Comb* and *Bragg* also turned on an interpretation of California unconscionability law with respect to arbitration provisions, which is an entirely different standard than that applied by Washington, Florida and federal law with respect to the validity of forum selection clauses.

17218145.1                                          8

Amazon be brought in Washington render the forum selection clause substantively unconscionable. *See, e.g., Carnival Cruise*, 499 U.S. at 593-95; *Universal Grading Service,* 2009 WL 2029796, at *18. To the contrary, the Eleventh Circuit and other courts routinely find that forum selection clauses such as the one here are valid and enforceable under all but the most exceptional situations. *See In re Ricoh Corp.*, 870 F.2d 570 (11th Cir. 1989); *Tricome*, 2009 WL 3365873, at *3 ("the Forum Selection Clause is not substantively unconscionable because it is not so unduly one-sided so as to shock the conscience"); *see also* cases cited in footnote 1 and surrounding text, *supra*. The parties' chosen choice of forum should be enforced.

3.  The Forum Selection Clause Is Not Unfair or Unreasonable

Plaintiffs have otherwise failed to meet their heavy burden to establish that the forum selection clause is unenforceable. Plaintiffs do not assert that the forum selection clause is the result of fraud or bad faith,[5] and do not seriously argue that its enforcement would violate a strong public policy. Plaintiffs also have offered no <u>evidence</u> indicating that they would be unable to litigate this case in Washington, or that Washington will be so gravely difficult and inconvenient that they would be deprived of their day in court. *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972). Indeed, "[m]ere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things." *Cent. Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 344 (3d Cir. 1966); *see also Meier,* 2010 WL 2738921, at *3 (enforcing forum selection clause despite Plaintiffs' arguments that they would be "deprived of their day in court" because "the

---

[5] The supposed "bad faith" and "fraud" alleged by Plaintiffs occurred, by Plaintiffs' own admission, <u>after</u> Plaintiffs had already entered into the Participation Agreement. Plaintiffs' suggestion that Amazon deliberately included the choice of law provision in its contract to insulate it from liability (Opp., at 17) is entirely without merit or any factual basis whatsoever. Since "[t]here is no evidence that [Amazon] chose this forum to prevent parties from pursuing legitimate claims," the forum selection clause should be enforced. *Meier,* 2010 WL 2738921, at *3.

weight of authority renders their position untenable").

Moreover, Washington is not a "remote alien forum." *See Carnival Cruise Lines*, 499 U.S. at 594 (quoting *Breman,* 407 U.S. at 17); *see also Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10, 11 (2d Cir. 1995) ("a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel;" a "plaintiff may have his 'day in court' without ever setting foot in a courtroom").  Indeed, there is no evidence here that Plaintiffs would not be able to participate in proceedings in Washington via telephone, videoconference, or over the internet. *Universal Grading Service,* 2009 WL 2029796, at *11 (plaintiffs could easily participate in proceedings remotely).  Indeed, the very same reasons advanced in Plaintiffs' Opposition regarding ease of exchanging documents across the country and "the advances in technology" [Opp., at 15] <u>also</u> demonstrate why litigation in Washington would not be inconvenient.

Nor is this dispute an inherently local one more suited to resolution in Florida than in Washington. *Universal Grading Service*, 2009 WL 2029796, at *11.  The alleged wrongful acts, including the supposed retention of funds and termination of Plaintiffs' access to the Marketplace, occurred, if at all, in Washington, and many (if not most) of the documents and witnesses are located in Washington.  The forum selection clause should be enforced, and this case should be dismissed or transferred immediately to avoid any prejudice to the Plaintiffs.

      **B.**      <u>**Alternatively, the Claims Should be Dismissed For Failure to State a Claim**</u>

Plaintiffs do not adequately address Amazon's Rule 12(b)(6) Motion, and each of the claims should be dismissed with prejudice for the reasons stated in the Motion.

**II.**      <u>**CONCLUSION**</u>

For the reasons stated in Amazon's Motion, this case should be dismissed or transferred.

Dated: August 12, 2010

**CARLTON FIELDS, P.A.**
CityPlace Tower – Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368

By: */s/ David B. Esau*
     James B. Baldinger
     Florida Bar No.: 869899
     jbaldinger@carltonfields.com
     David B. Esau
     Florida Bar No.: 650331
     desau@carltonfields.com

*Counsel for Defendant Amazon.com, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing system:

    */s/ David B. Esau*
    David B. Esau

## SERVICE LIST

Albert Segal
Marianna Chaparova
10490 S.W. 12th Terr.
Apt# 202
Miami, FL 33174
**(via U.S. Mail)**

17218145.1
11